# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE PATRICK HANEY, | CASE NO. 1:10-cv-00457-LJO-GBC (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND TO DISMISS ACTION, WITH PREJUDICE |
| v. | |
| ROUCH, et al., | |
| Defendants. | Doc. 31 |
| / | OBJECTIONS DUE WITHIN FIFTEEN DAYS |

**Findings and Recommendations**

**I. Procedural Background and *Woods v. Carey***

On October 16, 2009, Bruce Patrick Haney ("Plaintiff"), a former state prisoner proceeding pro se and in forma pauperis, filed a complaint pursuant to 42 U.S.C. § 1983. Doc. 1. On February 18, 2011, this Court issued an order requiring Plaintiff to either file an amended complaint or notify the Court of willingness to proceed on his a cognizable claim against Defendants Rouch and Moon ("Defendants") for First Amendment retaliation. Doc. 14. On March 17, 2011, Plaintiff notified the Court of his willingness to proceed on his cognizable claim against Defendants. Doc. 15.

On June 3, 2011, the Court issued a second informational order, advising Plaintiff that Defendants may file a motion for summary judgment and how Plaintiff must oppose the motion in order to avoid dismissal, pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998). Doc. 19. On June 13, 2012, Defendants filed a motion for summary judgment. Doc. 31.

On July 6, 2012, the Ninth Circuit found that the notice and warning of requirements for opposing a defendant's motion for summary judgment should be issued contemporaneously when

a defendant files a motion for summary judgment, as opposed to a year or more in advance. *Woods v. Carey*, 684 F.3d 934, 936 (9th Cir. 2012). On July 23, 2012, the Court issued an amended second informational order to Plaintiff, in accordance with *Woods*. Doc. 33.

On July 23, 2012, the Court ordered Plaintiff to submit an opposition or statement of non-opposition as required by Local Rule 230(l). Doc. 32. On July 30, 2012, Plaintiff filed a motion for extension of time to file an opposition to the motion for summary judgment. Doc. 34. In Plaintiff's motion, he stated he has trouble writing and needs to take public transportation to the law library. *Id.* On August 1, 2012, the Court granted Plaintiff a ninety-day extension of time to file an opposition to Defendants' motion for summary judgment. As of the date of these findings and recommendations, Plaintiff has not submitted a response to Defendants' motion for summary judgment or requested another extension of time. This matter is deem submitted pursuant to Local Rule 230(l).

## II. Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586

n.11. In resolving the summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

### III. Plaintiff Did Not Submit a Response to Defendants' Motion for Summary Judgment

Although Defendants filed their motion for summary judgment in June 2012, and the Court granted Plaintiff an extension of time until November 2012, Plaintiff has not submitted a response to the motion for summary judgment or requested an extension of time. Rule 56(e)(2) of the Federal Rules of Civil Procedure provides that "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must-by affidavits or as otherwise provided in this rule-set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. P. 56(e). If the moving party's statement of facts are not controverted in this manner, a court may assume that the facts as claimed by the moving party are admitted to exist without controversy. *See Beard v. Banks*, 548 U.S. 521, 527 (2006). The Court "is not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir.1988)). Instead, the "party opposing summary judgment must direct the Court's attention to specific triable facts." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003). Statements in a brief, unsupported by the record, cannot be used to create an issue of fact. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995). Therefore, the Court will deem the facts in the record as undisputed.

### IV. Undisputed Facts in the Record

Defendant Rouch is employed by the California Department of Corrections and Rehabilitation ("CDCR") as a Family Nurse Practitioner at Corcoran State Prison. She has worked

in this capacity for approximately seven years, and has worked for the CDCR for 14 years. (Defs. Mot. Summ. J., Doc. 31.) (Ex. A to Appendix, Rouch Decl. ¶ 2.) (SSUF #1.) Nurse Rouch has a Master's of Science in Nursing and is board certified by the American Association of Nurse Practitioners. (Ex. A to Appendix, Rouch Decl. ¶ 3.) (SSUF #2.) Nurse Rouch performs many of the same tasks as a medical doctor; such as providing patient care, monitoring chronic illnesses, and prescribing medications. (Ex. A to Appendix, Rouch Decl. ¶ 4.) (SSUF #3.)

Nurse Rouch treated Plaintiff on several occasions between 2008 and 2010. (Ex. A to Appendix, Rouch Decl. ¶ 5.) (SSUF #4.) On August 14, 2009, she treated Plaintiff for pain in his left wrist, and prescribed a splint for him. During the examination, Plaintiff also requested an arch support for his shoes, which she prescribed. (Ex. A to Appendix, Rouch Decl. ¶ 6.) (SSUF #5.) When an inmate is prescribed new medical equipment, is provided with a medical accommodation, or has a change to an existing accommodation, a Comprehensive Accommodation Chrono (CDC Form 7410) must be completed by the inmate's medical provider. (Ex. A to Appendix, Rouch Decl. ¶ 7.) (SSUF #6.) Because Nurse Rouch prescribed a wrist splint and arch support for Plaintiff, she had to generate a new Comprehensive Accommodation Chrono pertaining to these items. (Ex. A to Appendix, Rouch Decl. ¶ 8.) (SSUF #7.)

Upon review of Plaintiff's medical file, Nurse Rouch learned that he had an existing accommodation for lower tier (ground floor) housing. However, in her professional opinion, this accommodation was not medically necessary. (Ex. A to Appendix, Rouch Decl. ¶ 8.) (SSUF #8.) Lower tier housing accommodations are provided to inmates who have a disability or medical condition that restricts them from ambulating properly, and prevents them from being able to walk up the stairs to the second tier of their housing unit. (Corcoran is a two-tier prison.) (Ex. A to Appendix, Rouch Decl. ¶ 9.) (SSUF #9.) According to the CDCR CSP-Corcoran Policy Operational Procedure No. 1071, VI, A, (1), the requirements for issuance of a lower tier chrono are: (1) Disorder or treatment effecting equilibrium; (2) Alzheimer or other dementia; (3) Abdominal, chest, or back surgery within the last 6 months; (4) Full-time/part-time wheelchair user; (5) Blindness in both eyes; (6) Amputation or severe weakness of upper or lower extremity; (7) Body Mass Index (BMI) greater than 40; (8) Severe orthopedic conditions of hips, knees, ankles, feet, or upper extremity which

physically prevent the inmate from climbing to the upper bunk or up a flight of stairs; and/or (9) Due to advanced age, the inmate is at risk of injuring himself by climbing to the upper bunk or the upper tier. (Ex. A to Appendix, Rouch Decl. ¶ 10; Ex. B to Appendix, Moon Decl. ¶ 6.) (SSUF #10.)

Though it is true that Plaintiff was issued Accommodation Chronos in the past for lower tier housing, in Nurse Rouch's medical opinion, he did not need them, as he does not meet the criteria for this accommodation. (Ex. A to Appendix, Rouch Decl. ¶ 11.) (SSUF #11.) In addition to not satisfying the qualifying criteria for a lower tier accommodation, Plaintiff ambulates well and does not use an assistive device or mobility aide. (Ex. A to Appendix, Rouch Decl. ¶ 12.) (SSUF #12.) Thus, on August 14, 2009, Nurse Rouch issued an Accommodation Chrono for Plaintiff for a wrist splint, arch support, and a bottom bunk. On August 20, 2009, the chrono was reviewed and approved by Dr. E. Clark. (Ex. A to Appendix, Rouch Decl. ¶ 13.) (SSUF #13.) A subsequent chrono issued to Plaintiff on July 1, 2011, and authored by Nurse Practitioner M. Dhan, is consistent with Nurse Rouch's decision, and reflects that Plaintiff does not meet the criteria for lower tier housing. (Ex. A to Appendix, Rouch Decl. ¶ 14.) (SSUF #14.)

Plaintiff's allegations that Nurse Rouch did not provide him with a lower tier chrono in August 2009, in retaliation for an administrative appeal he filed in September 2008, are baseless. The appeal concerned a denial of his request for a medical transfer, which was a decision that Nurse Rouch was not involved with. (Ex. A to Appendix, Rouch Decl. ¶ 15.)  (SSUF #15.) Though Plaintiff mentions Nurse Rouch in the September 2008 appeal, she was not angry or resentful toward him for filing the appeal. The inmate appeals process is accepted as a normal aspect of prison life, and it is not an uncommon occurrence for inmates to appeal the actions and decisions taken by prison staff with which they do not agree. (Ex. A to Appendix, Rouch Decl. ¶ 16.)  (SSUF #16.) Nurse Rouch did not retaliate against Plaintiff because he filed an administrative appeal. Her decision not to provide him with a lower tier chrono was based upon the fact that he did not meet the criteria for it, and it was not medically necessary. The fact that Plaintiff had also filed an appeal that mentioned her a year earlier was coincidental, and was not a factor in her decision. (Ex. A to Appendix, Rouch Decl. ¶ 17.) (SSUF #17.)

Nurse Rouch and Dr. Moon never intended that Plaintiff suffer any undue or unnecessary

pain. Their intentions throughout were to provide adequate and necessary treatment to Plaintiff. (Ex. A to Appendix, Rouch Decl. ¶ 18; Ex. B to Appendix, Moon Decl. ¶ 12.) (SSUF #18.) Dr. Moon is a medical doctor at Corcoran, who has been practicing medicine for 22 years. (Ex. B to Appendix, Moon Decl. ¶ 2.) (SSUF #19.) As a medical doctor, Dr. Moon's responsibilities are to provide comprehensive patient care and to treat all diseases and medical conditions. (Ex. B to Appendix, Moon Decl. ¶ 3.) Dr. Moon was assigned as a physician on Facility A from July 2010, to August 2011. During his time on Facility A, he treated Plaintiff for his back pain, among other things. (Ex. B to Appendix, Moon Decl. ¶ 4.) (SSUF #20.)

On September 14, 2009, Dr. Moon examined Plaintiff, pursuant to an administrative appeal he filed, which alleged that Nurse Practitioner Rouch improperly denied him a lower tier accommodation chrono. (Ex. B to Appendix, Moon Decl. ¶ 5.) (SSUF #21.) On that day, Dr. Moon determined that Plaintiff did not meet the criteria for issuance of a lower tier chrono. His examination of Plaintiff revealed that his back was mildly tender; the strength in both of his legs was 4/5, which means his legs were strong, and that no weaknesses were identified; his walk was steady; his bend was 70-80 percent, which means he had good range of motion, and could bend without difficulty; that there was no visible gunshot wound; and no history of paralysis or right leg weakness. (Ex. B to Appendix, Moon Decl. ¶ 7.) (SSUF #22.)

An accommodation must be deemed medically necessary by the current medical staff in charge of the inmate's care. Pursuant to the California Code of Regulations, Title 15, § 3350(b)(1), "Medically Necessary means health care services that are determined by the attending physician to be reasonable and necessary to protect life, prevent significant illness or disability, or alleviate severe pain, and are supported by health outcome data as being effective medical care." In sum, Plaintiff's request for a lower tier accommodation was not medically necessary. (Ex. B to Appendix, Moon Decl. ¶ 8.) (SSUF #23.)

Plaintiff's allegations that Dr. Moon did not provide him with a lower tier chrono in August 2009 in retaliation for an administrative appeal he filed against him in October 2008 are without merit. (Ex. B to Appendix, Moon Decl. ¶ 9.) (SSUF #24.) Dr. Moon was not resentful toward Plaintiff because he filed an appeal against him in October 2008. Moreover, he could not provide

Plaintiff with an unnecessary medical accommodation simply because Plaintiff filed an appeal against him a year earlier. As a medical doctor, he is required to provide medically necessary treatment to inmates, regardless of whether or not they have filed an appeal against him in the past, and he would not put an inmate at risk of harm because of this. (Ex. B to Appendix, Moon Decl. ¶ 10.) (SSUF #25.) Dr. Moon did not retaliate against Plaintiff because he filed an administrative appeal. His decision to not provide him with a lower tier chrono was based upon the fact that he did not meet the criteria for it, and it was not medically necessary. The fact that Plaintiff had also filed an appeal against Dr. Moon a year prior was not a factor in his decision. (Ex. B to Appendix, Moon Decl. ¶ 11.) (SSUF #26.) Plaintiff has only been housed on the lower tier at Corcoran. (Ex. C to Appendix, Pl.'s Depo. at 14:3-11.) (SSUF #27.) The last two doctors who issued accommodation chronos to plaintiff did not provide him with an accommodation for lower tier housing. (Ex. C to Appendix, Pl.'s Depo. at 16:5-24.) (SSUF #28.) Nurse Rouch did not inform plaintiff that she retaliated against him because of an administrative appeal he filed. (Ex. C to Appendix, Pl.'s Depo. at 22:20-22.) (SSUF #29.) Dr. Moon did not tell plaintiff he retaliated against him. Plaintiff does not have evidence to support his contention that Dr. Moon retaliated against him because he filed an administrative appeal against the doctor. (Ex. C to Appendix, Pl.'s Depo. at 28:9-15.) (SSUF #30.)

### V. Legal Standard and Analysis for Plaintiff's Claim

#### A. First Amendment Retaliation and Linkage

##### 1. Legal Standard

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *accord Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). The adverse action need not be an

independent constitutional violation. *Pratt*, 65 F.3d at 806. "[T]he mere threat of harm can be an adverse action . . ." *Brodheim*, 584 F.3d at 1270. Plaintiff must allege a causal connection between the adverse action and the protected conduct. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).

Under § 1983, Plaintiff must link the named defendants to the participation in the violation at issue. *Iqbal*, 556 U.S. at 678-79; *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010); *Ewing*, 588 F.3d at 1235; *Jones*, 297 F.3d at 934. Liability may not be imposed on supervisory personnel under the theory of respondeat superior, *Iqbal*, 556 U.S. at 676; *Ewing*, 588 F.3d at 1235, and administrators may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them," *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *accord Starr*, 652 F.3d at 1205-08; *Corales*, 567 F.3d at 570; *Preschooler II v. Clark County School Board of Trustees*, 479 F.3d 1175, 1182 (9th Cir. 2007); *Harris v. Roderick*, 126 F.3d 1189, 1204 (9th Cir. 1997).

**2. Analysis**

Plaintiff has not established a genuine issue of material fact for trial as to his claim against Defendants for First Amendment Retaliation.

Plaintiff alleges Dr. Moon and Nurse Rouch retaliated against him by changing his lower tier chrono in August/September 2009, because of appeals he filed against them in September/October 2008. (*See generally* Am. Compl..) Although "timing can properly be considered as circumstantial evidence of retaliatory intent" *Pratt*, 65 F.3d at 808 (9th Cir. 1995), the delay between the September and October 2008 appeals and the alleged retaliation one year later is too great to create an issue of fact as to retaliatory intent. *Cf., Hines v. Gomez*, 108 F.3d 265, 268 (9th Cir. 1997) (inmate threatened defendant with a grievance the same day as the retaliatory incident).

Nurse Rouch has testified that she did not retaliate against Plaintiff because he filed an administrative appeal, and she does not believe the appeal even pertained to her. (SSUF #15.) The decision to not provide Plaintiff with a lower tier chrono was based upon the fact that he did not meet the criteria for it, and it was not medically necessary. The fact that Plaintiff also filed an appeal that mentioned her a year earlier was nothing more than coincidental. (SSUF #17.) Similarly, Dr.

Moon could not provide Plaintiff with an unnecessary medical accommodation simply because Plaintiff filed an appeal against Dr. Moon a year earlier. As a medical doctor, he is required to provide medically necessary treatment to inmates, regardless of whether or not they have filed an appeal against him in the past, and he would not put an inmate at risk of harm because of this. (SSUF #25.)

Finally, Plaintiff has admitted in deposition that, besides the attenuated timing, he has no evidence to support his contention that the defendants retaliated against him because of his administrative appeals. (SSUF #29-30.) Thus, even viewing the evidence in the light most favorable to Plaintiff, he has failed to create a genuine issue of fact as to whether there is a causal connection between his grievances against defendants in 2008 and the actions taken by defendants in 2009, to remove his lower tier chrono.

Plaintiff has the burden of showing that the defendants' actions determining he did not require a lower tier chrono "did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 568. "Legitimate goals of a correctional institution include the preservation of internal order and discipline and the maintenance of institutional security." *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995); *cf. Pratt*, 65 F.3d at 807 ("[Courts] should afford appropriate deference and flexibility to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory."). Defendants were justified in denying Plaintiff a lower tier chrono, as he did meet the criteria for it, and it was not medically necessary.

Pursuant to California Code of Regulations, Title 15, § 3350(b)(1), the issuance of a medical accommodation must be based on necessity, which means "Medically Necessary means health care services that are determined by the attending physician to be reasonable and necessary to protect life, prevent significant illness or disability, or alleviate severe pain, and are supported by health outcome data as being effective medical care." (SSUF #24.)

The criteria for a lower tier chrono is articulated in Operational Procedure No. 1071, which identifies the requirements for issuance of a lower tier chrono as: (1) Disorder or treatment effecting equilibrium; (2) Alzheimer or other dementia; (3) Abdominal, chest, or back surgery within the last 6 months; (4) Full-time/part-time wheelchair user; (5) Blindness in both eyes; (6) Amputation or

severe weakness of upper or lower extremity; (7) Body Mass Index (BMI) greater than 40; (8) Severe orthopedic conditions of hips, knees, ankles, feet, or upper extremity which physically prevent the inmate from climbing to the upper bunk or up a flight of stairs; and/or (9) Due to advanced age, the inmate is at risk of injuring himself by climbing to the upper bunk or the upper tier. (SSUF #10.) Defendants, who are medical professionals, have testified that Plaintiff did not meet these criteria. (SSUF #11, 23.)

On August 14, 2009, Nurse Rouch treated Plaintiff for pain in his left wrist, and prescribed a splint for him. She also prescribed him arch support for his shoes. (SSUF #5.) Because he was prescribed new medical equipment, Nurse Rouch was required to generate a Comprehensive Accommodation Chrono (CDC Form 7410). (SSUF #6.) Upon review of Plaintiff's medical file, Nurse Rouch learned that he had an existing accommodation for lower tier housing. However, in her professional opinion, this accommodation was not medically necessary, as Plaintiff did not have a disability that prevented him from proper ambulation. (SSUF #8-9.) Thus, Nurse Rouch did not renew the accommodation for lower tier housing.

On August 20, 2009, the chrono issued by Nurse Rouch was reviewed and approved by Dr. E. Clark. (SSUF #13.) Dr. Moon then examined Plaintiff on September 14, 2009. (SSUF #22.) Dr. Moon's examination of Plaintiff revealed, among other things, that the strength in both of his legs was 4/5, which means his legs were strong, and no weaknesses were identified; his walk was steady; and his bend was 70-80 percent, which means he had good range of motion, and could bend without difficulty. (SSUF #23.) Thus, Dr. Moon determined that Plaintiff did not meet the criteria to require lower tier housing. (*Id.*)

All subsequent chronos issued to Plaintiff are consistent with the chrono issued by Nurse Rouch, and reveal that he does not require a lower tier chrono. For example, on July 1, 2011, Nurse Practitioner M. Dhan provided Plaintiff with a chrono that did not give him a lower tier accommodation. (SSUF #14.) Additionally, Plaintiff testified that the last two doctors who issued accommodation chronos to him did not provide him with an accommodation for lower tier housing. (SSUF #28.) Thus, assuming Plaintiff once required a lower tier chrono for some reason, this is no longer the case, and is no longer medically necessary.

Providing medical accommodations to only those inmates who require them is a legitimate correctional goal, and Plaintiff has failed to create a genuine issue of fact as to whether Defendants' actions failed to advance this goal.

Finally, Plaintiff was not harmed by the loss of his lower tier chrono. Plaintiff testified that he has never been assigned to an upper tier cell. (SSUF #27.) Moreover, Plaintiff has since paroled, and does not face a threat of any future harm. (Doc. #30.) In sum, there is no genuine issue of material fact regarding the alleged violations of Plaintiff's First Amendment rights, and defendants are entitled to judgment as a matter of law.

### VI. Conclusion and Recommendation

Plaintiff has "failed to point to 'specific facts' in the record that could 'lead a rational trier of fact to find' in his favor. *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e))." *Beard*, 548 U.S. at 535. Accordingly, pursuant to Rule 56 of the Federal Rules of Civil Procedure, it is HEREBY RECOMMENDED that the Court GRANT Defendants' motion for summary judgment, and that this action be DISMISSED, with prejudice.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **fifteen (15) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." A party may respond to another party's objections by filing a response within **fifteen (15) days** after being served with a copy of that party's objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   December 4, 2012

UNITED STATES MAGISTRATE JUDGE